IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JENNIFER TIMPE, | ) CIVIL NO. 07-00306 JMS/KSC |
| | ) |
| Plaintiff, | ) ORDER (1) GRANTING WIMBERLY, |
| | ) ALLISON, TONG & GOO, INC.'S |
| vs. | ) MOTION FOR SUMMARY |
| | ) JUDGMENT; AND (2) GRANTING IN |
| WATG HOLDINGS INC., | ) PART AND DENYING IN PART |
| WIMBERLY ALLISON, TONG & | ) WATG HOLDINGS INC. AND |
| GOO, INC., and DOE DEFENDANTS | ) WIMBERLY, ALLISON, TONG & |
| 1-23, | ) GOO, INC.'S MOTION FOR |
| | ) SUMMARY JUDGMENT |
| Defendants. | ) |
| _____ | ) |

**ORDER (1) GRANTING WIMBERLY, ALLISON, TONG & GOO, INC.'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING IN PART AND DENYING IN PART WATG HOLDINGS INC. AND WIMBERLY, ALLISON, TONG & GOO, INC.'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Jennifer Timpe ("Plaintiff") brought this action alleging that she accepted a position with Defendant WATG Holdings, Inc. ("WATG") after she was promised specific benefits, but when she began her employment she was told that as a part-time employee she was not eligible for those benefits.  She claims that she was then terminated after three days on the job because she complained about the denial of benefits and violations of Hawaii law.  Plaintiff's Complaint alleges claims based on both the denial of benefits she claims were

promised to her and her termination.

On April 16, 2008, two Motions for Summary Judgment were filed by Defendants, one jointly filed by WATG and its wholly owned subsidiary Wimberly, Allison, Tong & Goo, Inc. ("Wimberly") (collectively, "Defendants"), and one filed solely by Wimberly. The motion filed by Defendants seeks summary judgment on all claims in Plaintiff's Complaint; the second motion filed by Wimberly is unopposed by Plaintiff.

Based on the following the court (1) GRANTS Wimberly's Motion for Summary Judgment, and (2) GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.

## II. BACKGROUND

Plaintiff applied for a part-time human resources position with WATG in its Honolulu office in late 2006. At the time, she was employed part-time at Mercer Health and Benefits, working 25 hours per week and receiving the same benefits as the company's full-time employees. Plaintiff interviewed with WATG twice in December 2006 and received a written job offer on January 3, 2007.

During her interviews and job negotiations with Lisa Paskalides, WATG's recruiter, Plaintiff claims that she was inaccurately told she would

receive a full-time employee's benefits package.  Later, during discussions on

January 2 and 3, 2007, Plaintiff claims that Paskalides sent her a benefits summary

sheet, Pl.'s Ex. A, and told her that she would be eligible for all benefits.  Pl.'s Ex.

8 at 112-18.  On January 3, 2007, Paskalides sent Plaintiff a "Letter of

Understanding" signed by Stacey Lezaja, WATG's Director of Human Resources,

who worked in the company's Irvine, California headquarters.  Pl.'s Ex. 2; Defs.'

Ex. B.  The Letter of Understanding states that Plaintiff is offered an "Exempt -

Part Time Regular" position as an "HR Representative," earning $39 per hour as

an "at-will employee."  *Id.*  The letter further states:

> **Benefit: Benefit Eligibility Date**: March 1, 2007 - 1st of the
> month after 30 days of employment.  You are currently eligible
> to participate in all WATG sponsored health benefit plans and
> activities.  Participation in the following plans will start the
> first of the month after a thirty day waiting period: medical,
> dental, life, disability and AD&D insurance.  401(k) Plan entry
> date is the first day of the first new pay cycle, commencing in
> the month following the completion of 90 days of service.
> Please review the Employee Handbook for further information.
> All WATG health benefit programs are subject to modification
> and change.  WATG has the right to change benefit programs
> at any time, with or without prior notice to employees, at its
> sole discretion.

*Id.*  Plaintiff signed and returned the Letter of Understanding to WATG on January

3, 2007.  On January 4, 2007, Plaintiff resigned from her position at Mercer Health

and Benefits.  Pl.'s Ex. 3.

Plaintiff's first day of employment at WATG was January 22, 2007. On January 23, 2007, she received a copy of the employee handbook and learned that as a part-time employee, she was not eligible for all the benefits afforded full-time employees.  Specifically, she would not receive life insurance, accidental death and dismemberment ("AD&D") insurance, or long-term disability insurance. Thoai Ha, another WATG human resources employee, confirmed that Plaintiff would not receive these benefits as a part-time employee.  Later that day, Plaintiff called Lezaja regarding her benefits.

According to Lezaja, Plaintiff called to complain that she was not receiving all of the benefits promised, and that WATG should provide benefits to all part-time employees regardless of any legal obligation to do so.  Lezaja describes Plaintiff's tone during this conversation as accusatory and demanding. Lezaja Decl. ¶ 6.  Plaintiff disagrees with this characterization and claims that the phone call was "cordial."  Pl.'s Decl. ¶ 6.  According to Plaintiff, she "never complained or acted in an uncooperative manner during my discussions with Ms. Lezaja."  *Id.* ¶ 9.  Plaintiff did tell Lezaja that she "was not happy that WATG would not honor the promises that had been made to me, and that while I was being recruited misstatements of fact had been made to me concerning the benefits that the company would provide to me."  *Id.* ¶ 8.  In addition to discussing her

4

benefits, Plaintiff claims that she told Lezaja that "the employee contributions for the medical premium seemed high and not in alignment with the [Hawaii] Prepaid Health Care law." *Id.* ¶ 7.

Lezaja claims that at the end of the conversation, she told Plaintiff to go home and think about the fact that WATG would not provide her with the disputed benefits, "and if the disputed benefits were a deal breaker, I would understand and she would have a decision to make." Lezaja Decl. ¶ 8. That evening, Lezaja sent Plaintiff an email stating that "this was an honest mistake," and listing the benefits that Plaintiff was actually eligible for. Defs.' Ex. C.

The next morning, on January 24, 2007, Lezaja and Plaintiff spoke again by telephone. According to Lezaja, she told Plaintiff that she did not think things would work out because of Plaintiff's personality, she was not a good fit for the culture of WATG, and she was being terminated effective immediately. Lezaja Decl. ¶ 8. Plaintiff disputes that Lezaja told her she had a confrontational personality or was not a good fit for WATG. Pl.'s Decl. ¶ 10. Plaintiff claims she told Lezaja:

> that I felt she and I had gotten off on the wrong foot and I was looking forward to meeting her next week in Irvine so that we could meet in person and perhaps reconnect. And that's when she told me that she didn't think that was going to happen, and that I had insulted her, and she, again, indicated to me that

5

> people like me who come from big corporations don't like
> people like them, and that they make mistakes . . . and she
> didn't really think that we could reconnect.

Pl.'s Ex. 8 at 142-43.  According to Plaintiff, Lezaja "indicated that I had insulted

her when I told her that there was a woman in the office who was considering

starting a family and that she wanted part-time benefits. . . .  She was rather hostile

with me, and she told me to collect my personal belongings and leave." *Id.* at 143-

44.  After the phone conversation, Lezaja sent Plaintiff an email stating that "our

arrangement is not working out as planned therefore please gather your personal

belonging[s] and you are free to leave the office immediately.  I agreed to pay you

through January 31, 2007 and this check will be Fedex[ed] to your home

tomorrow . . . ."  Defs.' Ex. D.

Plaintiff filed suit against Defendants on May 11, 2007 alleging that

(1) she was wrongfully terminated in violation of public policy; (2) she was

terminated because she insisted on receiving the full compensation she had been

promised in violation of Hawaii Revised Statutes ("HRS") Chapter 388 and is

entitled to damages under HRS § 388-11; (3) WATG falsely represented that she

would receive life, AD&D, and long-term disability insurance in order to induce

her to leave her job and take a position with WATG; (4) WATG should be

estopped from denying Plaintiff the benefits promised to her, upon which she

relied to her detriment; and (5) WATG violated the Hawaii Whistleblower

Protection Act ("HWPA"), HRS § 378-62, when she complained that WATG had

violated state law.

Defendants filed their Motions for Summary Judgment on April 16,

2008.  Wimberly's motion argues that because it is a subsidiary of Plaintiff's

employer WATG with no control over WATG's employees, it had no part in the

actions described in the Complaint.  Wimberly claims that Plaintiff has not alleged

any action taken by Wimberly that caused harm to Plaintiff, and there are no

extraordinary circumstances to warrant extending liability to Wimberly.  On May

15, 2008, Plaintiff filed a Statement of No Opposition to Wimberly's motion.[1]

Defendants' other motion seeks summary judgment on Plaintiff's

claims for promissory estoppel, misrepresentation, violation of HRS Chapter 388,

violation of the HWPA, and wrongful termination in violation of public policy.

Plaintiff filed an Opposition on May 15, 2008, and Defendants filed their Reply on

May 22, 2008.  The court held a hearing on June 2, 2008.

### III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of

---

[1] After reviewing Wimberly's unopposed Motion for Summary Judgment, the court concludes that Wimberly is entitled to summary judgment as to all of Plaintiff's claims, and GRANTS Wimberly's motion.

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  The burden initially lies with the moving party to show that there

is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary

judgment is mandated if the non-moving party 'fails to make a showing sufficient

to establish the existence of an element essential to that party's case.'"  *Broussard*

*v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

　　　　An issue of fact is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual

dispute affects the outcome of the claim or defense under substantive law

governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d

912, 919 (9th Cir. 2001).  When considering the evidence on a motion for

summary judgment, the court must draw all reasonable inferences on behalf of the

nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587

(1986).

## IV.  <u>ANALYSIS</u>

　　　　The court first addresses Plaintiff's promissory estoppel and

8

misrepresentation claims based on the denial of the disputed benefits, and then

discusses her termination-related claims for violation of HRS Chapter 388, the

HWPA, and wrongful discharge in violation of public policy.

## A.      Promissory Estoppel

Defendants move for summary judgment on Plaintiff's promissory

estoppel claim on the grounds that she was never "promised" the disputed

benefits, and her reliance on the representations was unreasonable.  Plaintiff

claims that an enforceable promise regarding the disputed benefits was made, and

that her reliance on the promise was reasonable.

Hawaii has adopted the Restatement (Second) of Contracts § 90, *see*

*Ravelo by Ravelo v. Hawaii County*, 66 Haw. 194, 200, 658 P.2d 883, 887-88

(1983), which states in part:

> Promise Reasonably Inducing Action or Forbearance
>
> > (1) A promise which the promisor should reasonably
> > expect to induce action or forbearance on the part of the
> > promisee or a third person and which does induce such
> > action or forbearance is binding if injustice can be
> > avoided only by enforcement of the promise.  The
> > remedy granted for breach may be limited as justice
> > requires.

In order to establish a claim for promissory estoppel, Plaintiff must establish that

(1) a promise was made; (2) the promisor must foresee that the promisee would

rely on the promise; (3) the promisee does in fact rely on the promise; and

(4) enforcement of the promise is necessary to avoid injustice.  *See In re Herrick*,

82 Haw. 329, 337-38, 922 P.2d 942, 950-51 (1996).

> For the purposes of promissory estoppel, "promise" is defined as a:

>> manifestation of intention to act or refrain from acting in a
>> specified way, so made as to justify a promisee in
>> understanding that a commitment has been made.  More
>> specifically, a promisor manifests an intention if he or she
>> believes or has reason to believe that the promisee will infer
>> that intention from his or her words or conduct.

*Gonsalves v. Nissan Motor Corp. in Haw., Ltd.*, 100 Haw. 149, 165, 58 P.3d 1196,

1212 (2002) (citation, quotation signals, and brackets omitted).

> Plaintiff claims that Defendants promised that she would receive the

disputed benefits in the January 3, 2007 Letter of Understanding, which states:

>> You are currently eligible to participate in all WATG
>> sponsored health benefit plans and activities.  Participation in
>> the following plans will start the first of the month after a thirty
>> day waiting period: medical, dental, life, disability and AD&D
>> insurance. . . .  Please review the Employee Handbook for
>> further information.  All WATG health benefit programs are
>> subject to modification and change.  WATG has the right to
>> change benefit programs at any time, with or without prior
>> notice to employees, at its sole discretion.

Pl.'s Ex. 2, Defs.' Ex. B.  Defendants argue that because they reserved their right

to "change benefit programs at any time," the Letter of Understanding did not

contain a promise that Plaintiff would receive the disputed benefits.  The court disagrees.

The fact that the Letter of Understanding reserved WATG's right to change programs does not render illusory or void the promise to provide Plaintiff with full benefits.  Despite Defendants' arguments to the contrary, the written agreement does not "expressly state[] WATG had no obligation whatsoever to provide those benefits."  Defs.' Reply 6.  Rather, the written agreement promises Plaintiff that absent a change in the benefits program, she would receive full benefits as described in the letter.  In other words, the promise was contingent on Defendants not changing the benefits program.  And it is undisputed that Defendants did not "change" their benefits program; instead, they belatedly told Plaintiff that she had never been eligible to participate.  Defendants' argument fails to perceive the critical difference between changing the benefits program and lacking the ability to participate from the outset.[2]

The court concludes that the Letter of Understanding, together with Paskalides' alleged assertions that Plaintiff would receive all full-time employee

---

[2] WATG did not rely on the Letter of Understanding's language allowing it to "change benefit programs" when notifying Plaintiff she was not eligible for the disputed benefits.  In fact, Lezaja stated that a mistake had been made in promising the disputed benefits, not that WATG was exercising its right to change the benefit program at any time.

benefits,[3] manifests an intention to provide the disputed benefits, which serves as a sufficient promise that Plaintiff alleges induced her to leave her position and accept the job with WATG.

Defendants also fail to establish that Plaintiff's reliance on the promise was unreasonable. Plaintiff had no reason to believe that she was ineligible for the disputed benefits. Further, the reservation of rights in the Letter of Understanding may reasonably be understood to mean that WATG could change its benefits program, but would not be understood to mean that it could withhold the benefits if the employee was otherwise eligible. A trier of fact could find that Plaintiff's reliance on the promise in the written agreement, which is consistent with Paskalides' oral representations, was entirely reasonable under the circumstances.

The court DENIES Defendants' Motion for Summary Judgment on Plaintiff's promissory estoppel claim.

---

[3] The court rejects Defendants' claim that the prior discussions between Plaintiff and Paskalides are barred by the parole evidence rule. Assuming the Letter of Understanding is a fully integrated agreement, the parole evidence rule bars only prior or contemporaneous oral agreements that contradict the terms of the written agreement. *See United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc.*, 113 Haw. 127, 141, 149 P.3d 495, 509 (2006) ("[T]he parol evidence rule bars evidence of prior contemporaneous negotiations and agreements that vary or alter the terms of a written instrument." (citation and quotation signals omitted)). The statements allegedly made by Paskalides are consistent with the terms of the Letter of Understanding and do not vary or alter its terms.

**B.    Misrepresentation**

Defendants argue that Plaintiff's misrepresentation claim is barred by

Hawaii's economic loss rule, which "bars recovery in tort for purely economic

loss."  *City Express, Inc. v. Express Partners*, 87 Haw. 466, 469, 959 P.2d 836,

839 (1998).  Hawaii's economic loss rule set is forth in HRS § 663-1.2: "No

person may recover damages, including punitive damages, in tort for a breach of a

contract in the absence of conduct that: (1) Violated a duty that is independently

recognized by principles of tort law; and (2) Transcended the breach of the

contract."  HRS § 663-1.2 codified the Hawaii Supreme Court's ruling in *Francis

v. Lee Enterprises, Inc.*, 89 Haw. 234, 235, 971 P.2d 707, 708 (1999).  *Francis*

held that a terminated employee could not recover in tort -- including punitive

damages -- for breach of an employment contract.[4]

Defendants argue that *Francis* bars Plaintiff's misrepresentation

claim because she is seeking tort damages for breach of an employment

agreement.  Plaintiff claims that her claim is one for "fraud in the inducement,"

Pl.'s Opp'n 21 n.7, where WATG "falsely represented" that Plaintiff would

---

[4] *Francis* rejected the argument that "wanton or reckless breach of contract is actionable in tort."  *Francis v. Lee Enters., Inc.*, 89 Haw. 234, 236, 971 P.2d 707, 709 (1999) (abolishing the cause of action for "tortious breach of contract" as established in *Dold v. Outrigger Hotel*, 54 Haw 18, 501 P.2d 368 (1972) and *Chung v. Kaonohi Ctr. Co.*, 62 Haw 594, 618 P.2d 283 (1980)).

13

receive the disputed benefits, and "[s]uch misrepresentations were promised to

Plaintiff by WATG to induce Plaintiff to quit her job with Mercer and take a job

with Defendant WATG." Compl. ¶ 27. The false representations include

Paskalides' specific assurances that Plaintiff would receive these benefits if she

accepted the position. Defendants argue that Plaintiff's claims arise from an

alleged breach of contract and tort recovery is barred.

The Ninth Circuit applying Nevada law in *Giles v. Gen. Motors

Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007),[5] found that plaintiffs' fraud

claim was not barred by the economic loss rule because the defendant's conduct

allegedly breached a duty imposed by law independent of the parties' contract.

*Giles* concluded that the tort claims were not "a mere contract claim cloaked in the

_____

[5] The Ninth Circuit's analysis in *Giles* interpreting Nevada law mirrors the approach adopted by the Hawaii Legislature in HRS § 663-1.2 and as interpreted by Hawaii courts. *Giles* found that:

> Based on our reading of the Nevada cases, Nevada's economic loss doctrine is generally consistent with the principles discernable in the case law of other jurisdictions. . . . Nevada law may also bar recovery for other tort claims where the plaintiff's only complaint is that the defendant failed to perform what was promised in the contract. But it does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff.

*Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007). Because Hawaii and Nevada apply the economic loss rule consistently, the court finds *Giles*' discussion of Nevada's economic loss rule instructive.

language of tort," and did "not duplicate a contract claim." *Giles*, 494 F.3d at 880.

*Giles* distinguished fraudulent conduct that was "extraneous to the contract" from

claims alleging misrepresentation regarding the quality of goods or services that

were "the subject of the contract." *Id.*  The latter is not barred by the economic

loss rule while the former is barred.

Plaintiff's misrepresentation claim involves conduct that is

extraneous to the employment agreement set forth in the Letter of Understanding.

Plaintiff claims that she was induced to leave her employment to take the job with

WATG because of Paskalides' representations that she would receive the same

benefits she was currently receiving.  Paskalides also sent her a benefits summary

sheet and indicated that she would be eligible for all of these benefits.  These

alleged misrepresentations occurred *before* any employment agreement was

reached.  The representations made by Paskalides allegedly induced Plaintiff to

agree to work for WATG and to sign the Letter of Understanding that was

consistent with the earlier oral inducement.  Such conduct transcends any contract,

and alleges a breach of a duty independent of any contract.  The court therefore

rejects Defendants' economic loss rule argument.

Further, to the extent Defendants argue that Plaintiff's reliance on the

misrepresentations was unreasonable, they have failed to meet their burden on

summary judgment.  The Letter of Understanding did not contain language that

was contradictory to prior misrepresentations -- both indicated that Plaintiff was

eligible for the disputed benefits -- and Defendants have not shown as a matter of

law that it was otherwise unreasonable for Plaintiff to rely on the representations.

A reasonable trier of fact could find that the statements were made to convince

Plaintiff to leave her previous position and to induce Plaintiff's reliance.  The

court DENIES Defendants' motion with respect to Plaintiff's misrepresentation

claim.

**C.     Claims Brought Under HRS § 388-10**

HRS Chapter 388 includes requirements that employers pay all wages

at least twice a month, not deduct or retain any part of any compensation earned by

an employee unless authorized by the employee, and provide all required

notifications, postings, and records required by law.  *See* HRS §§ 388-2, 388-6,

388-7.  Under HRS § 388-10(a):

> Any employer who fails to pay wages in accordance with this
> chapter without equitable justification shall be liable to the
> employee, in addition to the wages legally proven to be due, for
> a sum equal to the amount of unpaid wages and interest at a
> rate of six per cent per year from the date that the wages were
> due.

Under HRS § 388-11(a), an employee may bring a court action against the

employer to recover unpaid wages.

Plaintiff claims that "[t]ermination of an employee because they insist on receiving full compensation due is a violation of HRS § 388-10."[6] Compl. ¶ 26. Defendants move for summary judgment on the grounds that HRS Chapter 388 does not apply to benefit programs because they are not "wages," and because Chapter 388 applies only when an employer withholds wages actually earned by the employee.

Under HRS § 388-6, "[n]o employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee. . . ." Defendants claim that they did not withhold any portion of the

---

[6] In her Opposition, Plaintiff states that "[w]hile it is not clear that Ms. Timpe is entitled to recover in a civil action for the violation, [she] should be entitled to recover [her] costs and fees for prosecuting this case under the private attorney general doctrine." Opp'n 28. This argument is perplexing. Plaintiff acknowledges that under *Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. 250, 865 P.2d 170 (1994), "Chapter 388 does not provide a civil remedy for victims of retaliation and discharge," but goes on to argue that "under H.R.S. § 388-10(b), there is no question that such conduct violates that statute and is contrary to the purpose of the legislation." Pl.'s Opp'n 28. Plaintiff, however, provides no support or explanation for her claim that she has any rights under HRS § 388-10(b), which provides criminal penalties for employers who fail to pay an employee's wages in accordance with the chapter. Further, criminal statutes that provide for punishment by fine or imprisonment generally do not create privately enforceable rights or give rise to civil liability absent a statutory basis inferring a private cause of action. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316-17 (1979). No such inference can be drawn from § 388-10(b).

compensation earned by Plaintiff because they paid her for the period of work

from January 22 to 31, 2007, even though she worked only three days.  Further,

they claim that she is not entitled to additional unearned compensation -- including

life, AD&D, and long-term disability insurance -- because she was not eligible for

those benefits when she was terminated.

Even if Plaintiff was entitled to participate in the life, AD&D, and

long-term disability insurance programs, she would not have been eligible for

these benefits until March 1, 2007.  The Letter of Understanding states:

> **Benefit Eligibility Date**: March 1, 2007 - 1st of the month
> after 30 days of employment.  You are currently eligible to
> participate in all WATG sponsored health benefit plans and
> activities.  Participation in the following plans will start the
> first of the month after a thirty day waiting period: medical,
> dental, life, disability and AD&D insurance.  401(k) Plan entry
> date is the first day of the first new pay cycle, commencing in
> the month following the completion of 90 days of service.

Pl.'s Ex. 2; Defs.' Ex. B.

It is clear that Plaintiff was not employed by WATG on March 1,

2007 and was not eligible to participate in any of the benefits programs when she

was terminated on January 24, 2007.  Therefore, to the extent Plaintiff claims that

Defendants violated Chapter 388 because she was not compensated for the value

of her benefits when terminated, the court concludes that she had not earned any

such compensation.  Because she was paid her wages from January 22 to 31, 2007,

Defendants did not violate Chapter 388, and Plaintiff is not entitled to relief under

HRS § 388-10.[7]  The court GRANTS Defendants' motion with respect to

Plaintiff's Chapter 388 claim.

## D.    HWPA, HRS § 378-62

Defendants move for summary judgment on Plaintiff's HWPA claim

on the basis that she has not engaged in any protected conduct under the statute.

Under HRS § 378-62:

> An employer shall not discharge, threaten, or otherwise
> discriminate against an employee regarding the employee's
> compensation, terms, conditions, location, or privileges of
> employment because:
> > (1) The employee, or a person acting on behalf of the
> > employee, reports or is about to report to the employer,
> > or reports or is about to report to a public body, verbally
> > or in writing, a violation or a suspected violation of:
> > > (A) A law, rule, ordinance, or regulation, adopted
> > > pursuant to law of this State, a political
> > > subdivision of this State, or the United States. . . .

In order for an employee to prevail under the HWPA, "the employer's challenged

action must have been taken 'because' the employee engaged in protected

conduct. . . .  In other words, a causal connection between the alleged retaliation

_____

[7] The court does not reach Defendants' alternative argument that HRS Chapter 388 does
not apply to the disputed benefit programs because they are not "wages" as defined by law.

and the 'whistleblowing' is required." *Crosby v. State Dep't of Budget & Fin.*, 76 Haw. 332, 342, 876 P.2d 1300, 1310 (1994).  Defendants claim that Plaintiff identifies no protected conduct in her Complaint, and that her arguments on summary judgment are too ambiguous to be encompassed by the HWPA.

Although Plaintiff's Complaint states that her HWPA claim is based on her termination after she complained that WATG breached a statutory duty to pay her promised compensation, Plaintiff also alleged at her deposition and in her declaration on summary judgment that her HWPA claim is based on her complaints to WATG that it was violating Hawaii's Prepaid Health Care Act.[8]

In her Opposition, Plaintiff argues that WATG violated the state law by using a national formula that charged Hawaii employees an amount for health care premiums that was greater than the amount permitted under Hawaii law.

---

[8] Defendants take issue with Plaintiff raising this issue in opposition to summary judgment.  To the extent Defendants argue that Plaintiff first mentioned violations of the Prepaid Health Care Act in her Opposition to their motion, they are incorrect.  In fact, twice during her December 13, 2007 deposition, Plaintiff stated that she complained to Lezaja that the medical premiums charged to employees appeared higher than allowed by the law, *see* Pl.'s Ex. 8 at 134, and she specifically stated she believed she was terminated because she told Lezaja about violations of the Prepaid Health Care Act.  *Id.* at 159.

Further, the fact that the Complaint did not mention the Prepaid Health Care Act does not preclude Plaintiff from relying on it as a basis for her claims.  *See Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) ("Even when the plaintiff is represented by counsel, and counsel initially misconceived the proper legal theory of the claim, summary judgment does not follow if the plaintiff is entitled to relief on some other legal theory and requested as much." (citation and quotation signals omitted)).  Defendants had notice of Plaintiff's claim before the summary judgment proceedings and have not been prejudiced.  *See* 5 Charles Allen Wright & Arthur Miller, Federal Practice and Procedure § 1219, at 282-83 (3d ed. 2004).

Opp'n 30.  In her declaration, Plaintiff states that upon reviewing the WATG employee handbook, she "told Ms. Ha and later Ms. Lezaja that the employee contributions for the medical premium seemed high and not in alignment with the Prepaid Health Care Law."  Pl.'s Decl. ¶ 7.  In her December 13, 2007 deposition, she claims that she told Lezaja that upon reviewing the employee handbook she "noticed that the medical premiums were not in compliance with the Prepaid Health Care Act and that it seemed a bit odd to me."  Pl.'s Ex. 8 at 134.[9]

Defendants argue that these statements do not satisfy HRS § 378-62's requirement that the employee "reports or is about to report to the employer" a violation or suspected violation of law because Plaintiff's statements are too ambiguous to be considered a "report."  The court disagrees.  For purposes of a summary judgment motion, Plaintiff's deposition testimony that "medical premiums were not in compliance with the Prepaid Health Care Act," Pl.'s Ex. 8 at 134, constitutes a "report" for the purposes of the HWPA.  Further, this statement

---

[9] Further, when asked at her deposition "what is the public policy you are alleging WATG Holdings violated?" Plaintiff responded:

> [T]he public policy is that you can't be fired for insisting your employer pay you for full compensation, nor can you be terminated for bringing to your employer's attention violation of state or federal law.  Those are the only two things I talked to [Lezaja] about, was my pay and their violations.

Pl.'s Ex. 8 at 159.  When asked specifically what alleged violations of law she raised with Lezaja, Plaintiff responded "Prepaid Health Care Act."  *Id.*

is consistent with Plaintiff's statement in her declaration that she "told Ms. Ha and later Ms. Lezaja that the employee contributions for the medical premium seemed high and not in alignment with the Prepaid Health Care Law."  Pl.'s Decl. ¶ 7. Unlike the cases cited by Defendants, Plaintiff's statements qualify as a report to management of a suspected violation of law.  *Cf. Freeman v. Ace Tel. Ass'n*, 404 F. Supp. 2d 1127, 1140-41 (D. Minn. 2005) (holding that plaintiff was not a whistleblower because he had a fiduciary duty to report financial irregularities and was "required to make these reports as part of his job," and the statute "contemplates the report of a neutral party who blows the whistle for the protection of the public or at least some other third person, in addition to himself"); *Geonner v. Farmland Indus., Inc.*, 175 F. Supp. 2d 1271 (D. Kan. 2001) (finding that plaintiff's discussion with a co-worker that he objected to false reports allegedly made by defendant to the EPA and other agencies concerning a petroleum spill "is more properly characterized as a workplace dispute than a report bringing to light illegal conduct," because plaintiff did not report the violation to company management or law enforcement).

Further, Plaintiff was fired within a day of allegedly notifying Lezaja that she suspected a violation of the Prepaid Health Care Act.  Drawing all reasonable inferences in favor of Plaintiff, *see Matsushita Elec. Indus. Co.*, 475

U.S. at 587 -- *i.e.*, the close temporal proximity between the report and Plaintiff's

termination, combined with the short duration of Plaintiff's employment and

surrounding circumstances -- a reasonable trier of fact could conclude that

Plaintiff's report was a substantial or motivating factor for her termination.  The

court DENIES Defendants' motion as to Plaintiff's HWPA claim.

**E.     Wrongful Termination in Violation of Public Policy**

        The Hawaii Supreme Court recognized the common law tort of

wrongful discharge in violation of public policy in *Parnar v. Americana Hotels,*

*Inc.*, 65 Haw. 370, 380, 652 P.2d 625, 631 (1982), holding that an "employer may

be held liable in tort where his discharge of an employee violates a clear mandate

of public policy."  In order to determine "whether a clear mandate of public policy

is violated, courts should inquire whether the employer's conduct contravenes the

letter or purpose of a constitutional, statutory, or regulatory provision or scheme."

*Id.*, 652 P.2d at 631; *see also Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App.

250, 257, 865 P.2d 170, 173 (1994).  "As a general rule, the common law remedy

for wrongful discharge is precluded only when the statutory provision relied upon

as a bar to the action provides a sufficient remedy in itself, making the creation of

an additional common law remedy unnecessary."  *Id.* at 258, 865 P.2d at 174.

        Defendants argue that they are entitled to summary judgment on

Plaintiff's wrongful discharge in violation of public policy claim because she

cannot base her claim on either (1) a violation of Chapter 388, or (2) the HWPA.

The court addresses each in turn.

### 1.    Chapter 388 Claim

Although *Smith* held that an employee could bring a wrongful

discharge in violation of public policy claim based on Chapter 388, *see* 10 Haw.

App. at 260-61, 865 P.2d at 174-75, the court concludes that Plaintiff cannot

maintain her claim in this instance.  Plaintiff's discharge allegedly based on her

complaints that she was not eligible for benefits does not violate "a clear mandate

of public policy," *Parnar*, 65 Haw. at 380, 652 P.2d at 631, because as discussed

above, Plaintiff was never entitled to the disputed benefits.  *Smith* states that "[t]he

clearly established policy of Chapter 388 is to ensure that the employee is fully

compensated and has available to him or her all the records necessary to accurately

determine that full payment was made."  *Smith*, 10 Haw. App. at 260, 865 P.2d at

175.  The court has determined that Plaintiff was fully compensated in this

instance because she was not eligible for the disputed benefits when she was

terminated.

To the extent Plaintiff claims that she was discharged in retaliation

for complaining to WATG about other violations of law (*i.e.*, her whistleblower

claims), the court addresses those claims below.  The court GRANTS Defendants'

Motion for Summary Judgment on Plaintiff's wrongful discharge claim based on

violation of Chapter 388.

### 2.     HWPA Claim

Defendants argue that to the extent Plaintiff's wrongful discharge

claim is based on her HWPA claim, it is barred because the HWPA provides the

exclusive statutory remedy.  This argument is without merit.

*Ross v. Stouffer Hotel Co.*, 76 Haw. 454, 879 P.2d 1037 (1994),

recognized the general rule that when a public policy is already embodied in a

statute and the statute itself provides a remedy, courts should not permit further

remedies under a duplicative wrongful discharge claim.  *Ross*, however, cited HRS

§ 378-69 as an example of "clear legislative intent to the contrary," of this general

rule.  *Ross*, 76 Haw. at 464 & n.11, 879 P.2d at 1047 & n.11.  HRS § 378-69, part

of the HWPA, states:

> The rights created herein shall not be construed to limit the
> development of the common law nor to preempt the common
> law rights and remedies on the subject matter of discharges
> which are contrary to public policy.  In the event of a conflict
> between the terms and provisions of this part and any other law
> on the subject the more beneficial provisions favoring the
> employee shall prevail.

Relying on *Ross* and HRS § 378-69, this court held in *Nelson v. Nat'l*

25

*Car Rental Sys., Inc.*, 2006 WL1814341, at *5 (D. Haw. June 30, 2006), that the

argument that a plaintiff "cannot maintain a claim for termination in violation of

public policy because it is 'duplicative' of his whistleblower claim is without

merit."  The court therefore DENIES Defendants' motion as to Plaintiff's

wrongful discharge claim based on the HWPA.

## V.   CONCLUSION

Based on the foregoing, the court GRANTS Wimberly's Motion for

Summary Judgment, and GRANTS in part and DENIES in part WATG's and

Wimberly's Motion for Summary Judgment.  The court GRANTS the motion as to

Plaintiff's claims based on violation of HRS Chapter 388 and wrongful discharge

based on Chapter 388.  The court DENIES the motion as to the remainder of

Plaintiff's claims.

///

///

///

///

///

///

///

26

The following claims remain against WATG: (1) promissory estoppel; (2) misrepresentation; (3) violation of the HWPA, HRS § 378-62; and (4) wrongful discharge in violation of public policy based on violation of the HWPA.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 10, 2008.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Timpe v. WATG Holdings, Inc. et al.*, Civ. No. 07-00306 JMS/KSC, Order (1) Granting Wimberly, Allison, Tong & Goo, Inc.'s Motion for Summary Judgment; and (2) Granting in Part and Denying in Part WATG Holdings Inc. and Wimberly, Allison, Tong & Goo, Inc.'s Motion for Summary Judgment